**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **PIERCE ASSOCIATES, INC.,** |
| **Plaintiff,** |
| v. |
| **ST. PAUL MERCURY INSURANCE CO.,** |
| **Defendant.** |

Civil Action No. 04-1906 (JDB)

**ORDER**

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, defendant St. Paul Mercury Insurance Co. ("St. Paul") requests reconsideration of the Court's March 13, 2006, decision entering partial summary judgment for plaintiff Pierce Associates, Inc. ("Pierce") on the issue of St. Paul's liability for breach of the duty to defend Pierce under the terms of a commercial general liability policy. See Pierce Assocs., Inc. v. St. Paul Mercury Ins. Co., 421 F. Supp. 2d 11, 13 (2006). In reaching that decision, the Court interpreted the language of the policy's defense provision to impose on the insurer (St. Paul) a duty to defend a lawsuit brought against a third-party surety -- here, Liberty Mutual Insurance Co. ("Liberty") -- where the suit reasonably could be construed as raising claims against the insured (Pierce) that, if successful, would have triggered the insurer's obligation to indemnify the insured. In moving for reconsideration (or, in the alternative, for a certification of an appeal of the March 13, 2006, interlocutory order), St. Paul asserts that the Court committed clear errors of law in its analysis of Pierce's breach-of-contract claim. Although the Court rejects St. Paul's allegations of error in the denial of St. Paul's motion

for summary judgment, it will, for the reasons set out herein, reconsider its decision to *grant* summary judgment to Pierce.

Before explaining why the Court has decided to partially revise the memorandum opinion and order of March 13, 2006, a brief summary of the record leading up to that decision is appropriate. The complaint by Pierce alleges that St. Paul breached its contractual duty to defend Pierce when it refused to pay the costs of defending Pierce's surety, Liberty, in a lawsuit that named both Pierce and Liberty as defendants ("the New York action"). See Compl. ¶¶ 49-52. That suit sought to recover losses allegedly caused by Pierce's failure to properly install plumbing fixtures for a hotel and condominium development in Washington, D.C. ("the project"). Pierce succeeded in obtaining dismissal from the New York action on personal-jurisdiction grounds, but the claim against Liberty remained until the New York Supreme Court dismissed the entire action on grounds of *forum non conveniens*. In the interim between Pierce's dismissal from the New York action and the dismissal of the entire case, Pierce spent approximately $240,000 on legal representation for Liberty.[1]

The Court concluded that St. Paul's refusal to pay for the defense of Liberty in the New York action was a breach of St. Paul's duty under the policy "to defend any protected person against a claim or suit for injury or damage covered by this agreement ... even if all the allegations of the claim or suit are groundless, false, or fraudulent," J.A. Ex. 9 at 4, because, although Liberty was not a "protected person" within the meaning of the policy, representation of Liberty in the

---

[1] Pierce does not seek recovery of any of the expenses relating to the defense it provided for Liberty during the period when Pierce also was a defendant in the New York action because the need for separate counsel for Liberty arose because of a conflict of interest at the law firm representing Pierce.

New York action was, at least in part, a defense of a "claim" against *Pierce*, which was a "protected person."[2]  By so concluding, the Court rejected St. Paul's contention that the policy language unambiguously limited the insurer's defense duty to claims or lawsuits that *directly* targeted the insured.  See Pierce, 421 F. Supp. 2d at 19 ("[T]he language [of the policy] ... did not foreclose the possibility that St. Paul would be obliged to defend Pierce against an indirect claim ... arising out of potentially covered property damage.").

St. Paul now seizes on the Court's use of the adjective "indirect" as evidence that the Court read into the contract a word that was not there and thereby "ma[de] a new contract for the parties under the guise of interpreting the writing." St. Paul Mem. in Supp. of Mot. for Reconsideration at 5.  The Court did no such thing.  In arguing that the Court wrongly "inserted" the word "indirect" into the policy, id. at 4, what St. Paul really is saying is that the word "direct" was implicitly included in the text as a modifier to the word "claim."  But that is precisely the reading the Court rejected when it held that nothing in the language or structure of the policy precluded the broadest reading of the term "claim" -- that is, as a demand that seeks damages from a

---

[2] Contrary to St. Paul's contention in its motion for reconsideration, the Court's interpretation of the policy did not expand the universe of "protected persons" to include Liberty. Rather, the Court concluded that a lawsuit against a party *other than* a protected person, such as Liberty, may in some circumstances (such as those present in the New York action) constitute a *claim against a protected person*, such as Pierce.  Moreover, the policy provisions that identify "protected persons" and "additional protected persons" remain essential to determining whether that claim creates a reasonable possibility of coverage (a necessary condition for the duty to defend to arise) because coverage is limited to "amounts any *protected person* is legally required to pay."  See J.A. Ex. 3 at 1 (emphasis added).  Hence, there cannot be a reasonable possibility of coverage unless one of the identified insureds might be required by law to make a payment that would qualify for indemnity under the policy.  As the Court said in its earlier opinion, "[i]f a protected person would make such a payment upon resolution of a claim or suit in favor of the claimant or plaintiff, then there is a reasonable possibility of coverage, and St. Paul -- *under the terms of this policy* -- would have a duty to defend against that claim or suit," even though the protected person was not the immediate target of the claim/suit.  Pierce, 421 F. Supp. 2d at 19 n.5.

protected person, whether directly or, in some circumstances, indirectly.  As the Court pointed out, however, not every case in which an insured's liability is indirectly implicated can reasonably be considered a demand that seeks damages from a protected person (i.e., a "claim," within the meaning of the policy).  See Pierce, 421 F. Supp. 2d at 19.  The Court identified six characteristics of the New York action that made that lawsuit a claim against a protected person even after the insured party, Pierce, was no longer a named defendant:  (1) the insured had been a defendant but was dismissed from the case without an adjudication on the merits, (2) the third party was present in the action solely by virtue of its role as the insured's surety, (3) resolution of the claims against the third party would have required resolution of allegations about the insured's conduct, (4) the insured would have been legally bound to indemnify the third party for any payment in satisfaction of a judgment, (5) the plaintiff in the suit had made closely related demands directly against the insured through a separate action, and (6) the insurer was fully aware of those circumstances.  Id.  Certainly St. Paul is correct that the Court's opinion did not foreclose the possibility that another set of circumstances may constitute a demand that seeks damages from the insured through an action that targets someone other than the insured, but the Court does not necessarily agree that a duty to defend would arise in the particular situations that St. Paul hypothesizes.  See St. Paul Mem. in Supp. of Mot. for Reconsideration at 11.[3]  Nor does the Court accept St. Paul's argument that the Court's interpretation of the policy's defense provision turned

---

[3] The existence of a claim against a protected person is merely a necessary, but not a sufficient, condition for the duty to defend to arise.  The claim also must be "for injury or damage" (as defined by the policy) and must "give[] rise to the reasonable possibility of recovery under the policy," Fitzpatrick v. American Honda Motor Co., 575 N.E.2d 90, 91-92 (N.Y. 1991), meaning that the "injury or damage" must be of a type that is covered by the policy terms and arguably not within one of the policy exclusions.

on "the placement of the phrase 'protected person' *before* the preposition 'against,'" see St. Paul Reply at 4 (emphasis supplied), rather than *after* the preposition. As the above discussion makes clear, the Court's interpretation would have been the same had the policy imposed a "duty to defend any claim or suit *against a protected person*" rather than a "duty to defend *any protected person against* a claim or suit." The distinction the Court drew in its opinion when it compared the policy language here with that of another policy -- interpreted in Merrick Constr. Co. v. Hartford Fire Ins. Co., 449 So. 2d 85 (La. Ct. App. 1984), and Henkel Corp. v. Hartford Accident & Indem. Co., 399 F.Supp. 2d 607, 613 (E.D. Pa. 2005) -- was that the latter policy imposed a defense obligation only where there was a "suit against the insured," which plainly contemplates formal litigation in which the insured is a named defendant, whereas the St. Paul policy extends to "claims" as well as suits, and the term "claim" (i.e., "a demand which seek damages") does not carry with it the same limitation.[4]

The Court concludes, however, that its decision requires correction in one respect: granting summary judgment to Pierce on the basis that the language of the defense provision was ambiguous. As noted above, the ambiguity resulted from an absence of textual evidence indicating that the insurer's defense duty arose only when the claim or suit *directly* targeted the

---

[4] St. Paul likewise misses the mark with its renewed assertion that Pierce's claim in this action was for a breach of the duty to indemnify rather than a breach of the duty to defend. See St. Paul Mem. in Supp. of Mot. for Reconsideration at 12-15. That argument is little more than a red herring because it focuses on a demand that was not the subject of this action: the demand made by Liberty that Pierce pay its attorney's fees. Id. at 12. The subject of the motions for summary judgment was the demand made by the plaintiffs in the New York action against Liberty as Pierce's surety. It is *that* demand that the Court found may constitute a claim against Pierce within the meaning of the policy. Similarly without merit is St. Paul's rehashed assertion that the claim did not fall wholly within the policy's contract-liability exclusion, for the reasons stated in the Court's earlier opinion. See Pierce, 421 F. Supp. 2d at 22-24.

insured. The Court held that, "to the extent th[e] policy language admits of more than one interpretation, it implicates the familiar maxim, well-established in New York law, that 'ambiguities in an insurance policy must be construed against the insurer' (and in favor of the insured), as a matter of law." Pierce, 421 F. Supp. 2d at 19 (quoting Lipton, Inc. v. Liberty Mut. Ins. Co., 314 N.E. 2d 37, 39 (N.Y. 1974)).[5] Applying this so-called "*contra proferentem*" rule was mistaken under the circumstances because it was based upon the Court's belief that the parties had conceded there was no available extrinsic evidence that would potentially aid in the interpretation of the contract. Under New York law, to render judgment as a matter of law in a case involving interpretation of an insurance contract, the Court must be able to say either that the policy is unambiguous or that it is ambiguous but there is no extrinsic evidence that will cure the ambiguity, in which case the ambiguity is resolved against the insurer-drafter. As the Second Circuit has explained:

> [T]he initial interpretation of a contract is a matter of law for the court to decide. Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous. An ambiguity exists where the terms of a contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business. ...
>
> If the court finds that the terms, or the inferences readily drawn from the terms, are ambiguous, then the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract. ... If the language is susceptible to different reasonable interpretations, and where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment. Consequently, only where the court finds that the terms are unambiguous, or where no extrinsic evidence exists, may it properly grant summary judgment to one of the parties.

---

[5] The parties agreed that the Court should apply New York law in interpreting the policy.

Alexander & Alexander Servs., Inc., v. These Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998) (internal citations and quotations omitted). If, however, the parties come forward with extrinsic evidence that is merely "conclusory or does not shed light upon the intent of the parties," a court need not submit the matter to a jury but "may resort to the *contra proferentem* rule of contract construction and construe any ambiguities in the contract against the insurer as a matter of law." Canada Life Assurance Co. v. Guardian Life Ins. Co. of Am., 242 F.Supp. 2d 344, 358 (S.D.N.Y. 2003); see also New York v. Home Indem. Co., 486 N.E. 2d 827, 829 (N.Y. 1985) ("[I]f the tendered extrinsic evidence ... will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court ... [and] the ambiguity must be resolved against the insurer which drafted the contract.").

  Prior to the submission of St. Paul's motion for reconsideration, neither party had raised with the Court the possibility that there might be evidence outside the four corners of the policy that would shed light upon the meaning that was intended by the parties. Now that the Court has rejected St. Paul's view of the purported "plain language" of the policy, however, St. Paul asserts that, although it maintains that the policy is unambiguous, it may be able to produce extrinsic evidence that would cure the ambiguity identified by the Court. Because the Court did not -- and, indeed, cannot -- conclude that the policy *unambiguously* supports Pierce's interpretation of the defense provision, it may enter summary judgment for Pierce only if available extrinsic evidence does not "resolve the equivocality of the language of the contract" in St. Paul's favor, see Home Indem. Co., 486 N.E. 2d at 829, and thereby permits application of the *contra proferentem* interpretive rule to construe the ambiguous provision in Pierce's favor. See Schering Corp. v. Home Ins. Co., 712 F.2d 4, 10 (2d Cir. 1983) ("[W]here a contract is not wholly unambiguous,

summary judgment must be denied even where both parties move for pre-trial resolution. It follows that where one party opposes summary judgment by propounding a reasonable interpretation of a disputed matter, it may be sufficient to defeat the motion. Moreover, where a party seeks discovery of evidence probative of the movant's intent related to the critical question, there remains the possibility that ... a genuine issue of material fact might come to light, requiring denial of the summary judgment motion.") (internal citation omitted).

In light of the fact that St. Paul has requested (albeit somewhat belatedly) an opportunity to discover and present extrinsic evidence, as well as the fact that the parties will, in any event, have an opportunity to engage in discovery with respect to other issues in this action, the Court will vacate the entry of partial summary judgment for Pierce and permit the parties to conduct discovery regarding their intent with respect to the scope of St. Paul's duty to defend Pierce against claims for covered injury or damage.[6]

Upon consideration of the foregoing and the entire record herein, it is this 14th day of June, 2006, hereby

**ORDERED** that [33] St. Paul's motion for reconsideration is **GRANTED IN PART** and **DENIED IN PART**;[7] it is further

**ORDERED** that the Court's order of March 13, 2006, is **VACATED**; it is further

**ORDERED** that [22] the motion for partial summary judgment by defendant St. Paul

---

[6] Given that St. Paul seems to concede that the precise situation presented by this case was never contemplated by the parties, it may be quite difficult for St. Paul to produce evidence that will shed light on the parties' intent, but the Court will not preclude St. Paul from trying.

[7] St. Paul's request for relief in the alternative -- namely, certification of an appeal of the March 13, 2006, interlocutory order -- is denied.

Mercury Insurance Co. is **DENIED** for the reasons stated in the Court's March 13, 2006, memorandum opinion; it is further

**ORDERED** that [24] the motion for partial summary judgment by plaintiff Pierce Associates, Inc., is **DENIED**; it is further

**ORDERED** that the parties may conduct discovery for the purpose of providing the Court with any extrinsic evidence that might "shed light upon the intent of the parties," Canada Life Assurance Co., 242 F.Supp. 2d at 358, and thereby "resolve the equivocality of the language of the contract," Home Indem. Co., 486 N.E. 2d at 829; and it is further

**ORDERED** that the parties shall, by not later than June 30, 2006, submit a joint proposal for a scheduling order to govern the remainder of this litigation.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Copies to:

Barry Jay Fleishman
Kristi Singleton
DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P.
2101 L Street, NW
Washington, DC  20037-1526
Email: singletonk@dsmo.com

*Counsel for plaintiff Pierce Associates, Inc.*


Walter Joseph Andrews
Ruth S. Kochenderfer
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, VA 22102
Email: wandrews@hunton.com

*Counsel for defendant St. Paul Mercury Insurance Co.*